UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC GALLOWAY

            Petitioner,               CIVIL ACTION NO. 07-15242

vs.                            DISTRICT JUDGE STEVEN J. MURPHY
                                  MAGISTRATE JUDGE DONALD A. SCHEER

NICK LUDWICK,

            Respondent.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

RECOMMENDATION: The instant Petition for Writ of Habeas Corpus should be dismissed as Petitioner has shown no violations of his federal constitutional rights.

*   *   *

Petitioner, Eric Galloway, a Michigan prisoner[1] convicted of second-degree murder, first-degree fleeing or eluding a police officer, operating a vehicle while license suspended causing death, failure to stop at the scene of an accident causing death, two counts of second-degree fleeing or eluding resulting in serious injury, two counts of operating a vehicle while license suspended causing serious impairment, receiving or concealing a stolen motor vehicle and possession of marijuana, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, on December 10, 2007, challenging the validity of his underlying state convictions. Petitioner was convicted after a bench trial on July 2, 2004, in the Oakland County Circuit Court, and was subsequently sentenced to thirty two to fifty years of imprisonment.

---

[1]Petitioner is currently incarcerated at the St. Louis Correctional Facility at 8585 North Croswell Road in St.Louis, Michigan 48880.

Petitioner filed an appeal as of right in the Michigan Court of Appeals and, in an unpublished per curiam opinion dated February 14, 2006, the Court affirmed the convictions and sentence.(Docket #257850). Thereafter, Petitioner filed an application for leave to appeal with the Michigan Supreme Court.  On October 31, 2006, the Court denied leave to appeal in a standard order (Docket #130897).

Petitioner filed the instant Petition for Writ of Habeas Corpus in this Court on December 10, 2007, asserting the following three grounds for relief:

> 1. There was insufficient evidence to sustain his conviction for second degree murder because the evidence failed to establish the required mental state of wanton and willful disregard or malicious intent beyond a reasonable doubt.
>
> 2. The trial court erroneously refused to suppress Petitioner's statements to the police in violation of his Miranda rights.
>
> 3. The trial court incorrectly scored the offense variable of the sentencing guidelines.

Respondent filed an Answer to the Petition on June 16, 2008, arguing that none of the issues raised by Petitioner had any merit.  No reply to Respondent's Answer has been filed to date. The case was referred to the undersigned on January 5, 2009.

STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), effective April 24, 1996, significantly changed the manner in which federal courts review habeas petitions. See 28 U.S.C. § 2254.[2]  Pursuant to the

_____

[2]  The Supreme Court in Lindh v. Murphy, 521 U.S. 320 (1997), clarified that those changes apply to cases filed after April 24, 1996. See also Groseclose v. Bell, 130 F.3d 1161, 1164 (6th Cir.1997), cert. denied, 523 U.S. 1132 (1998). Petitioner filed the petition at issue here in December 2007, well after the effective date of the AEDPA. Therefore, the provisions of the AEDPA, including the amended standard of review, apply to this case.

amended provisions of § 2254(d), a writ of habeas corpus may not be granted unless the state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> 28 U.S.C. § 2254(d)(1)-(2).

In reviewing the petition to determine, pursuant to subsection (2), whether the decision was based on an unreasonable determination of facts, we presume correct the factual findings made by the state court, § 2254(e)(1), and the petitioner may rebut the presumption of correctness only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998).

On April 18, 2000, the Supreme Court issued a decision in Williams v. Taylor, 529 U.S. 362 (2000), setting forth the standard of review that a federal habeas court must apply under § 2254(d) with respect to the effect of federal law.  The Court held that a decision of the state court is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Id. at 412. The Court further held that an "unreasonable application" occurs when "the state court identifies the correct legal principle from this Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 408.  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court

concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly." Id. at 411.

THE FACTS

The facts upon which the challenged conviction is based can be excerpted from the

unpublished opinion of the Michigan Court of Appeals on February 14, 2006 (Docket #11):

> On December 1, 2003, shortly after 1:00 a.m., Sergeant Jonathan
> Schultz of the Beverly Hills Police Department observed a maroon
> minivan with one nonoperational taillight. Sergeant Schultz
> activated his overhead lights to stop the vehicle. Defendant, the
> driver of the minivan, pulled over on Walmer Street and stopped.
> Before Sergeant Schultz could exit his police car, however,
> defendant fled in the minivan. At that point, Sergeant Schultz
> turned on his siren, followed the minivan, and obtained its license
> plate number, which he relayed to his dispatcher. Sergeant
> Schultz continued to follow the minivan, and observed it run a stop
> sign, run over a curb, turn into and travel in oncoming traffic lanes,
> and proceed through three blinking yellow lights. Sergeant Schultz
> obtained a radar speed of 45 to 50 miles an hour for the minivan
> on Southfield Road, where the speed limit was 25 miles an hour.
> Thereafter, the minivan continued to accelerate up to a speed of
> 91 miles an hour. It ultimately ran a red light at that speed at the
> intersection of Southfield Road and Twelve Mile Road. As the
> minivan ran the red light, it struck a Ford Taurus, which was
> traveling eastbound through the intersection. Defendant never
> slowed before impact. Sergeant Schultz anticipated that defendant
> planned to run the red light and, before the crash, he notified his
> dispatcher that he was backing off from the chase. He slowed
> down before the accident occurred. Immediately after the crash,
> defendant exited the driver's side of the minivan and ran away.
> During the chase, Sergeant Schultz had been informed that the
> minivan was stolen[3].
>
> The Taurus's back seat passenger, Haimut Amsula, was ejected
> from the vehicle on impact and died of severe head injuries.
> Senait Testye, the front seat passenger in the Taurus, broke her
> back. At the time of trial, she testified that she continues to suffer

---

[3]The minivan was stolen on November 15, 2003. When it was recovered, the ignition was punched.

pain every time she stands and that she has never returned to work. Lulah Tabit, the driver of the Taurus, suffered fractures of her pelvis, hip, rib and vertebrae.

Defendant was captured two blocks from Twelve Mile Road by Southfield police officers. When he was first spotted by the police, he ran from them. At the time of his arrest, he possessed two baggies of marijuana. The evidence revealed that defendant had never obtained a driver's license. However, he had been ticketed in the past for driving violations, and had two suspensions on his driving record. Defendant had marijuana metabolites in his blood six hours after the accident.

On December 1, 2003, defendant was interviewed by Michigan State Police Trooper Adam Henderson. Defendant initially claimed that he was not the driver of the minivan, but was just a passenger. Later, he admitted that he was driving and that he ran away after the crash to get away from the police. He knew he had a warrant out for his arrest. Defendant indicated that he had paid money to a "dope guy" to borrow the minivan.

At trial, defendant testified that he rented the van from a "dope man" on December 1, 2003, and was on his way to visit some girls before an officer attempted to stop him. Defendant had "an idea" that the vehicle he was driving was stolen. He initially pulled over for the officer, but then decided to run. He had an outstanding warrant and did not want to go to jail. He knew the officer was behind him, following him, and trying to stop him, but he did not pull over because he did not want to go to jail.  Defendant, who never attended driver's training and did not possess a driver's license, was aware that other traffic was on the road. He knew his driving experience was limited. During the chase, however, he never looked at the speedometer. He was too busy trying to get away. When defendant approached the intersection of Southfield Road and Twelve Mile Road, he saw a car stopped in the intersection in front of him. There were one or two other cars in the area, but he did not see any cars in the intersection. He knew the traffic light was red, but thought it would turn green by the time he got to it.  He increased his speed and moved around the stopped car.  He testified that he increased his speed to try to get away.  He admitted that he saw the Taurus before the crash but, by then, it was "too late."  He never slowed down before the accident, and he admitted that he knew he was speeding. Defendant also admitted that he had  marijuana in his possession

**5**

and that he jumped from the minivan and ran from the police after the crash. Defendant claimed that he did not anticipate that someone would get killed. He admitted, however, that he smoked a lot of marijuana the day before the accident and smoked his last "blunt" at approximately 5:00 p.m. on November 30, 2003. He was still "buzzing" at the time of the accident.

Michigan Court of Appeals Opinion, pp 1-3.

ISSUES

1. SUFFICIENCY OF EVIDENCE AT TRIAL

Petitioner claims that the evidence presented at trial was insufficient to convict him of second-degree murder. He maintains that the evidence failed to establish the required mental state of wanton and willful disregard, or malicious intent, beyond a reasonable doubt. In In re Winship, 397 U.S. 358, 364 (1970), the Supreme Court held that the due process clause requires that all criminal convictions be based upon proof beyond a reasonable doubt. In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court held that this standard has application in the law of habeas corpus:

> [I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.
> Id. at 324.

In applying this standard in habeas corpus cases, the federal courts must view the evidence in the light most favorable to the prosecution. The petition must be denied if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. See also Moore v. Duckworth, 443 U.S. 713 (1979); Brewer v. Overberg, 624 F.2d 51 (6th Cir. 1980), cert. denied, 449 U.S. 1085 (1981). As

long as there is substantial evidence to support the verdict reached, a federal court may not reverse.  United States v. Chandler, 752 F.2d 1148, 1151 (6th Cir. 1985).

The elements of second-degree murder are (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. People v. Aldrich, 246 Mich App 101, 123 (2001)(quoting People v. Mayhew, 236 Mich App 112, 125 (1999)). Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.  People v. Goecke, 457 Mich 442, 463 (1998).  Malice may be inferred from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm.  The prosecution is not required to prove that the defendant  actually intended  to  harm  or  kill.  Instead, the  prosecution must prove the intent to do an act that is in obvious disregard of life-endangering consequences. People v.  Werner, 254 Mich App  528, 531 (2002).

The undersigned is persuaded, after a careful review of the trial record, that the evidence presented by the prosecution established the essential elements of the crime beyond a reasonable doubt.  Taken in the light most favorable to the prosecution, there was sufficient proof offered by the state to support the finding of the trial judge that Petitioner wantonly and willfully disregarded the likelihood that the natural tendency of his behavior was to cause death or great bodily harm by driving over 90 miles per hour through a red light into a busy intersection without making any attempt to brake or to avoid a collision.

As pointed out by the Michigan Court of Appeals, Petitioner consciously chose to run from the police after initially stopping for an officer.  In attempting to elude the police,

Petitioner acted with obvious disregard of life endangering consequences. The life endangering acts were summarized by the state appellate court as follows:

> He accelerated the minivan, ran through a stop sign, ran over a curb, crossed into oncoming traffic lanes, proceeded through three blinking yellow lights without slowing down, knew he was approaching an intersection where the light was red, knew there was other traffic around the intersection, and accelerated through the red light at 91 miles an hour, striking the victim's automobile. His testimony made clear that he was aware of what was occurring, including that he was being followed by the police, who wanted to stop him, and that he was approaching a red light. Nevertheless, he continued to "pat" the accelerator. He was determined to get away from the police because he did not want to go to jail. After he hit the [victim's] Taurus, he continued his quest to elude the police by fleeing on foot.
>
> Michigan Court of Appeals Opinion, pp 3-4.

Defendant's act of fleeing the police at such high rates of speed, while disregarding traffic signals and the safety of other vehicles, supports an inference that he acted with a wanton disregard for human life. Furthermore, Petitioner's intention of eluding the police in order to avoid jail indicates a depraved, anti-social motive for his conduct. Petitioner intentionally set in motion a force likely to cause death or great bodily harm. Taken in the light most favorable to the prosecution, there was sufficient proof offered by the state to support the finding of the trier of fact that Petitioner acted with malice causing the death of an innocent motorist, without justification or excuse. The state court's resolution of Petitioner's sufficiency claim was not an unreasonable application of the standard of Jackson v Virginia. There was sufficient evidence for a rational trier of fact to find that Petitioner committed second degree murder. Under the deferential standard contained in the new AEDPA amendments, the state court's conclusion was clearly not unreasonable. Accordingly, this claim should be dismissed as being without merit.

**8**

## 2. CUSTODIAL INTERROGATION

Petitioner next claims that the trial court erred when it failed to suppress his custodial statements.  He argues that the prosecutor had failed to prove at the suppression hearing that he had been "properly advised of, and knowingly and intelligently waived, all his *Miranda*[4] rights."  Respondent argues to the contrary.

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions against a defendant. Colorado v. Connelly, 479 U.S. 157, 163-64 (1986). A confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question." McCall v. Dutton, 863 F.2d 454, 459 (6th Cir. 1988). When determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." Miller v. Fenton, 474 U.S. 104, 112 (1985). Without coercive police activity, however, a confession should not be deemed involuntary.  Connelly, supra, 479 U.S. at 167 ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause"). The burden of proving that a confession was obtained involuntarily rests with the petitioner.  Boles v. Foltz, 816 F.2d 1132, 1136 (6th Cir. 1987). Voluntariness need only be established by a preponderance of the evidence.  Id.

---

[4]Miranda v. Arizona, 384 U.S. 436 (1966).

2:07-cv-15242-SJM-DAS   Doc # 14   Filed 03/31/09   Pg 10 of 12   Pg ID 623

In the instant case, the trial court conducted a hearing and determined that both

Petitioner's waiver of his *Miranda* rights and his confession were voluntary.  On appeal, the

Michigan Court of Appeals affirmed the trial court's decision, stating as follows:

> Trooper Henderson was unequivocal in his testimony that he read
> verbatim each and every right to defendant and discussed those
> rights with him before the waiver. We therefore reject defendant's
> claim that he was not fully advised of all of his rights and thus,
> could not have waived them.  Because he was advised of all of his
> rights, the trial court did not err in finding a knowing and intelligent
> waiver of those rights.

> Michigan Court of Appeals Opinion, p. 5.

Considering the totality of circumstances in this case, I am persuaded that the state

courts' determination that Petitioner's waiver and confession were voluntary was a

reasonable application of controlling Supreme Court precedent.  First, the record reveals

that there was no coercive police activity. At the hearing on the motion in limine, a police

officer testified that he did not physically abuse or threaten Petitioner. This testimony was

uncontradicted. Moreover, Petitioner was not in custody or questioned by police for an

extended period of time. Petitioner does not claim that he was physically intimidated, or that

he was deprived of food, water, or other essentials. Despite Petitioner's limited education,

he understands English and was mature enough to answer responsively following the

police officer's explanation of his constitutional rights.

The trial court's finding of credibility is a subsidiary factual finding by a state court

which is entitled to the presumption of correctness.  Miller, 474 U.S. at 112.  Petitioner has

presented no evidence to rebut the presumption that the state court's findings are correct.

Accordingly, having scrutinized all of the relevant factors, I am satisfied that Petitioner's

waiver of his *Miranda* rights, and his subsequent confession, were voluntary such that his

constitutional rights were not violated by the admission of his confession into evidence at trial.  Petitioner is thus not entitled to habeas relief on this claim.

3. <u>EXCESSIVE SENTENCE</u>

Petitioner also claims that his 32 to 50 year sentence was excessive because Michigan's sentencing guidelines were scored incorrectly. A federal court cannot review the severity of a sentence or the state court's failure to reduce a sentence if the sentence imposed is within statutory limits unless the petitioner alleges an impropriety in the sentencing process itself.  See <u>Gunsoles v. Gudmanson</u>, 724 F.Supp. 624, 629 (E.D. Wis. 1979). The United States Constitution contains no proportionality guarantee.  <u>Harmelin v. Michigan</u>, 501 U.S. 957, 965 (1991). Petitioner has not argued that his sentence exceeded statutory limits, or that there had been any impropriety in the sentencing process itself.

To the extent that Petitioner is claiming that his sentence violates the Michigan state sentencing guidelines, his claim is not cognizable in a habeas proceeding because it is a state law claim.  <u>Thomas v. Foltz</u>, 654 F.Supp 105, 106-107 (E.D. Mich. 1987).  Given the severity of the underlying offense (second degree murder), the sentence imposed does not appear to be disproportionate to the seriousness of the crimes committed.  The claim raises no federal constitutional issues and must be rejected as inappropriate for habeas corpus relief.

For all of the above reasons, the undersigned is persuaded that there is no substantial showing of any violation of Petitioner's constitutional rights, and no basis under the highly deferential standard of the new AEDPA to find any unreasonable application of clearly established federal law by the state trial courts in this case. Accordingly, it is recommended that the instant Petition for Writ of Habeas Corpus be dismissed.

The parties are advised that any objection to this Report and Recommendation must be filed with the Court within ten (10) days after they are served with a copy, or further appeal from Judge Murphy's acceptance thereof is waived.


                                        s/Donald A. Scheer
                                        DONALD A. SCHEER
                                        UNITED STATES MAGISTRATE JUDGE
DATED: March 31, 2009

_____

## CERTIFICATE OF SERVICE

I hereby certify on March 31, 2009 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on March 31, 2009: **Eric Galloway.**

                                        s/Michael E. Lang
                                        Deputy Clerk to
                                        Magistrate Judge Donald A. Scheer
                                        (313) 234-5217